


Ira G. Greenberg
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant
750 Lexington Avenue, 8th floor
New York, NY 10022
(212) 308-4411

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

THE BARTON GROUP, INC.,

        Plaintiff,                      No.

versus

NCR CORPORATION,

        Defendant.              NOTICE OF REMOVAL

-----------------------------------------------------------------x

        Defendant NCR Corporation hereby removes this action to this Court and respectfully shows this Court as follows:

        1.    This action was commenced by the filing of a summons and complaint on or about May 23, 2008. A copy of the summons and complaint is attached. No further proceedings have taken place in this action.

        2.    Service of process was effectuated upon CT Corporation, NCR's agent for receipt of service of process, on on or about June 19, 2008, and NCR first received it on or about June 23, 2008. Receipt of such process in that manner was the first receipt of a copy of the complaint in any manner. Thus, removal is timely.

        3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. On information and belief, plaintiff Barton Group, Inc. is a New York

corporation with its principal place of business in New York. Defendant NCR Corporation is a Maryland corporation with its principal place of business in Ohio. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in that, while the damages sought in the complaint are not specified, the applicable contracts, a copy of which is annexed, call for Barton Group to receive a percentage of all sales of certain technology to McDonald's Corporation, the purchasing power of which is obviously quite substantial, or, in the alternative, the fair value of Barton Group's services.

    4. Written notice of the filing of this notice of removal shall be served upon counsel for plaintiff Barton Group, Inc. and filed with the Clerk of the Supreme Court of the State of New York, County of New York, promptly after the filing of this notice of removal.

Dated: New York, NY
        June 23, 2008

                                                    /s/ Ira G. Greenberg
                                                    Ira G. Greenberg
                                                    EDWARDS ANGELL PALMER & DODGE LLP
                                                    Attorneys for Defendant
                                                    750 Lexington Avenue, 8th floor
                                                    New York, NY 10022
                                                    (212) 308-4411

TO:

Harry P. Sacks, Esq.
HOLLAND & KNIGHT LLP
Attorneys for Plaintiff
195 Broadway, 24th floor
New York, NY 10007
(212) 513-3200

**Summons & Complaint**

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
06/19/2008
CT Log Number 513546173

**TO:** Peter Lieb, General Counsel
NCR Corporation
1700 S. Patterson Blvd.
Dayton, OH 45479-

**RE:** **Process Served In New York**

**FOR:** NCR Corporation (Domestic State: MD)

RECEIVED JUN 23 2008

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | The Barton Group, Inc., Pltf. vs. NCR Corporation, Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | New York County: Supreme Court, NY<br>Case # 107341/08 |
| **NATURE OF ACTION:** | Breach of Contract - Failure to pay amount owe to BGI for sales of products to McDonalds |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/19/2008 at 10:13 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after the service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Harry P Sacks<br>Holland & Knight LLP<br>195 Broadway, 24th Floor<br>New York, NY 10007<br>212-513-3200 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day, 798964426483<br>Email Notification, Elizabeth Wright ELIZABETH.WRIGHT@NCR.COM<br>Email Notification, Peter Lieb NL210009@exchange.DAYTONOH.NCR.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Christopher Tilton |
| **ADDRESS:** | 111 Eighth Avenue<br>New York, NY 10011 |
| **TELEPHONE:** | 212-894-8940 |

Page 1 of 1 / RJ

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------X

THE BARTON GROUP, INC.,

                Plaintiff,

-against-

NCR CORPORATION,

                Defendant.

---------------------------------------------------------------X

Index No. 107341/08

Plaintiff designates New York County as the place of trial.

The basis of venue is CPLR 503(a)

**SUMMONS**

Plaintiff resides at
1040 First Avenue, #271
New York, New York 10022

TO THE ABOVE NAMED DEFENDANT

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorneys within twenty (20) days after service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
        May 23, 2008

                                      HOLLAND & KNIGHT LLP

                                      By:_____
                                            Harry P. Sacks
                                        Attorneys for Plaintiff
                                        195 Broadway, 24th Floor
                                        New York, New York 10007
                                        (212) 513-3200

Defendant's address:

1700 South Patterson Boulevard
Dayton, Ohio 45479
c/o CT Corporation System
    111 Eighth Avenue
    New York, New York 10011

FILED WITH COPY
NOT COMPARED

MAY 2 3 2008

COUNTY CLERK'S OFFICE
NEW YORK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

THE BARTON GROUP, INC.,

        Plaintiff,

-against-

NCR CORPORATION,

        Defendant.

-----------------------------------------------------------------X

Index No. 107341-08

**COMPLAINT**

        The Barton Group, Inc. ("BGI"), by its attorneys, Holland & Knight LLP, as and for its complaint against defendant herein, alleges as follows:

        1.      BGI is a domestic corporation with its principal place of business at 1040 First Avenue, No. 271, in the County, City and State of New York.

        2.      Upon information and belief, defendant is a Maryland corporation, with its principal place of business in Dayton, Ohio, and is authorized to and regularly conducts business in New York State.

        3.      Upon information and belief, the amount in controversy between the parties is in excess of $25,000.

First Cause of Action

4. Pursuant to a proposal to BGI by defendant for a partnering relationship between them in developing certain technology for McDonald's Corporation ("McDonald's"), BGI entered into a written contract with defendant dated September 3, 2003, effective as of August 1, 2002 (the "Contract"), with respect to the development of certain projects for McDonald's known as the McDonald's Automatic Sandwich Wrap Project ("ASW Project"), and alternative technological applications known as the Sticky Label Project and other related technological and conceptual applications, all as is set forth in greater detail in the Contract. (The ASW Project, the Sticky Label Project, and related technological and conceptual applications, are hereinafter referred to collectively as "the Products".) The Contract is incorporated herein with the same force and effect as if set forth in its entirety herein, and BGI begs to refer to same upon the trial of this action.

5. As is set forth in greater detail in the Contract, defendant agreed therein that it would pay commissions to BGI of 4% of revenues received by defendant from McDonald's with respect to the sales or licensing of the Products.

6. BGI duly performed its work under and in connection with the Contract, except insofar as its performance may have been prevented or waived by defendant.

7. Defendant has materially breached and defaulted on its obligations under the Contract by, among other things, failing to pay the amounts owing to BGI thereunder.

8. The total amount owing by defendant to BGI for the sales of the Products to McDonald's, for which defendant has failed to pay to BGI, is presently unknown by BGI.

9. By reason of the foregoing, BGI is entitled to be paid the amounts owing to it under the Contract, said amounts to be determined upon the trial hereof

### Second Cause of Action

10. BGI repeats and realleges the allegations in paragraphs 1 through 9 hereof.

11. As is set forth in greater detail in the Contract, defendant agreed therein that it would supply to BGI, on a quarterly basis, reports showing all commissionable receipts from McDonald's for the sale of the Products.

12. Defendant has failed to supply said reports.

13. By reason of the foregoing, BGI is entitled to be furnished with such reports and defendant should be compelled to furnish same.

### Third Cause of Action

14. BGI repeats and realleges the allegations contained in paragraphs 1 through 9 hereof and 11 through 13 hereof.

15. On or about February 22, 2008, defendant improperly and without valid justification ordered all past and future payments to BGI under the Contract to be stopped.

16. The aforementioned order by defendant constituted a breach by anticipatory repudiation of the Contract.

17. By reason of the foregoing, BGI is entitled to be paid all of the amounts owing and to be owing to it under the Contract and is entitled to a declaratory judgment that the Contract is valid and remains in full force and effect.

### Fourth Cause of Action

18. BGI repeats and realleges the allegations contained in paragraphs 1 through 9 and 15 through 17 hereof.

19. BGI has, at the instance and request of defendant, performed in good faith all of the services and work requested of it with respect to the development of the Products and the interactions with McDonald's with respect thereto, all from 2002 to date.

20. By reason of the foregoing, BGI is entitled to be paid by defendant for the fair and reasonable value of such services and work performed by BGI.

WHEREFORE, BGI demands judgment as follows:

(a) On the First Cause of Action, judgment against defendant for the amounts owing to BGI under the Contract, plus interest thereon, said amounts to be determined upon trial;

(b) On the Second Cause of Action, an Order directing defendant to supply to BGI the quarterly reports required to be furnished under the Contract;

(c) On the Third Cause of Action, an Order declaring that the Contract is valid and remains in full force and effect, and that BGI is entitled to be paid all of the amounts owing and to be owing to it under the Contract plus interest thereon;

(d) On the Fourth Cause of Action, an Order directing that defendant pay to BGI the fair and reasonable value of the work and services performed by BGI with respect to the Products, said value to be determined at the trial hereof; and

   (e) the costs and expenses of this action and such other and further relief that the Court deems just and equitable under the circumstances.

Dated: New York, New York
   May 23, 2008

             HOLLAND & KNIGHT LLP

             By: _____
                Harry P. Sacks
             Attorneys for Plaintiff
             195 Broadway, 24th Floor
             New York, New York 10007
             (212) 513-3200

\# 5357026_v1

**2002 Contract**

DUPLICATE ORIGINAL

# THE BARTON GROUP, INC.

1040 First Avenue  *  # 271 * New York, New York 10022

*TEL: 212/588—1043  <>  FAX: 212/832—6090  <> email: lb@consultbarton.com*

July 11, 2002

NCR Corporation, Systemedia Division
9095 Washington Church Road
Dayton, Ohio 45342

**Re:   Business Generation Agreement**

Dear Sir or Madam:

Business Generation Agreement effective August 1, 2002 (Agreement), between The Barton Group, Inc. (BGI) with its principal place of business at 1040 First Avenue (# 271), New York, New York 10022 and NCR Corporation, by and throught its Systemedia Division (NCR) having its principal place of business at 9095 Washington Church Road, Dayton, Ohio 45342.

WHEREAS, BGI represents that it has an sales agreement with McDonald's Corporation and any purchasing authorities affiliated with the McDonald's System (collectively, McD) for all sales of products, machinery and equipment, supplies and technology transfer (licensing and royalty sales and fees) regarding the project known as the McD Automatic Sandwich Wrap Project (ASW Project) (for purposes of this Agreement, the definition of ASW Project shall not include Point of Sale hardware, associated central processing units, or point of sale or data warehousing software and services);

WHEREAS, NCR desires to submit a bid and compete for the ASW Project;

WHEREAS, McD has authorized BGI to encourage potential vendors to McD associated with the ASW Project to enter into a sales lead agreement with BGI;

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties hereto agree as follows:

1: NCR hereby appoints BGI as its exclusive sales agent with respect to, and strictly limited to, the ASW Project with McD for all sales of products, machinery and equipment, supplies and technology transfer (licensing and royalty sales and fees). BGI agrees to accept such exclusive agency and, as NCR shall direct, to represent NCR in NCR's efforts to secure the ASW Project. NCR shall at all times retain the right and ability to interact directly with McD wihtout involving BGI. In the absence of further written agreement and except for the ASW Project, NCR shall have no obligation toward BGI and BGI shall have no right to compensation from NCR with respect to any projects, product or services sales, or potential product or services sales opportunities NCR has had, now has, or may have in the future to McD. Nothing in this agreement shall limit any other NCR division's ability to sell other products or services by any other division of NCR not expressly related to the ASW Project, and BGI shall have no right to or expectation of compensation related thereto.

2: BGI represents and warrants to NCR that:

- BGI has an sales agreement with McD ("BGI-McD Agreement") for the ASW Project. The BGI-McD Agreement specifically authorizes BGI to enter into

commission agreements, such as this Agreement, with proposed vendors. BGI has disclosed it proposed commission arrangements to McD.

- BGI is free to enter into this Agreement and to perform each of the terms, conditions and covenants contained in this Agreement. BGI's performance of this Agreement shall not conflict with any obligation of BGI, including any agreements with other proposed vendors to McD regarding the ASW Project. Furthermore, BGI is not restricted or prohibited, contractually or otherwise, from entering into or performing this Agreement.

- BGI shall faithfully and accurately convey to McD information and documentation provided by NCR in aid of NCR's efforts to secure the ASW Project.

- BGI shall not provide, directly or indirectly, any information provided by NCR, whether written, oral, electronic, or other form, to any competitor of NCR. BGI shall not use any information provided by NCR to solicit business from any other entity other than McD.

- BGI shall not misrepresent or mischaracterize to McD any communications made by NCR to BGI during the term of this Agreement and BGI agrees to promptly, accurately, and completely relay without delay all McD communications through BGI intended by McD for NCR.

3: The parties shall be independent contractors. Nothing in this agreement shall be construed to give either the power, express or implied, to direct or control the daily activities of the other, or to constitute the parties as employer and employee, franchisor and franchisee, partners, joint venturers, co-owners, principal and agent, or otherwise as participants in a joint undertaking. Each party understands and agrees that, except as specifically provided here, neither party grants the other the power or authority to make or give any agreement, statement, representation, warranty, or other commitment on behalf of the other, or to enter into any contract, or otherwise incur any liability or obligation, express or implied, on behalf of the other, or to transfer, release, or waive any intellectual property right, or other right, title or interest of the other. Neither party, nor any representative, agent or subcontractor of a party, will hold itself out as anything but an independent contractor to the other party.

4: The initial term of this Agreement is the later of (a) 12 months from the Effective Date or (b) until McD awards the ASW Project to a vendor or (c) McD decides not to pursue the ASW Project. Thereafter it will renew for additional 12-month periods if the parties each elect to enter into such a renewal. If NCR is awarded all or part of the ASW Project at a time when BGI is serving as NCR's sales agent under this Agreement, this Agreement shall automatically renew for additional 12 month terms until such time as NCR is no longer supplying any goods or services to McD on the ASW Project. NCR may terminate this Agreement immediately without further liability to BGI if BGI (a) breaches any material term or condition of this Agreement including any express warranty, (b) ceases to function as a going concern or to conduct operations in the normal course of business, (c) has a petition filed by or against it under any state or federal bankruptcy or insolvency laws (or their foreign equivalents) which petition has not been dismissed or set aside within sixty (60) days of filing, or (d) makes a general assignment for the benefit of creditors, suspends business or commits any act amounting to business failure, or makes a voluntary assignment of or transfers all or substantially all of its property. In the event that NCR is awarded some or all of the ASW Project and (1) the NCR-McD relationship voluntarily or involuntarily terminates for any reason or no reason, or (2) the ASW Project is terminated, BGI shall not be entitled to further compensation pursuant to paragraph 6 below as of the date of such termination.

5: If awarded the ASW Project business, NCR will seek to enter into a contractual relationship with McD that shall contain all performance-related obligations and pricing and price change mechanisms.

6: NCR agrees that it will pay BGI a business generation commission of 5% of ongoing product sales and licensing and or royalty fees from any ASW Project sales, provided that such revenues are actually received by NCR. Business generation commissions shall be calculated on net revenues, defined to be net of freight, tax, insurance, incidentals (but not including products supplied to McD for the ASW Project), returns, allowances, charges, claims, unearned payment discounts (if applicable), discounts and allowances, and interest on invoices not timely paid. BGI shall be responsible for payment of all applicable taxes on such commission. If NCR is not awarded all or any part of the ASW Project or if BGI breaches an express warranty, BGI shall not be entitled a commission, fees, expense reimbursements, costs, or the like, incurred or anticipated by BGI.

7: Such commission payments shall be made by NCR to BGI within 45 days of the end of each calendar quarter for qualifying revenues that NCR actually receives on the ASW Project from McD during that quarter. In order to facilitate the record-keeping task of this transaction, NCR will supply a report on a quarterly basis showing commissionable receipts from McD for the ASW Project. In addition, NCR will maintain consistent with its then-applicable document retention policy copies of, or, if electronically generated, a electronic file showing all relevant invoices and records of receipts concerning payment by McD to NCR related to the ASW Project. NCR shall be entitled to off-set against such commission payments any liabilities or debts owed by BGI to NCR.

8: This agreement constitutes the entire agreement of the parties on the matters referred to herein, and shall not be modified, changed or amended except in writing signed by the parties.

9: The interpretation and enforcement of this agreement shall be governed by the substantive law of the State of New York, without resort to its conflict of law rules.

10: The obligations and benefits, rights and duties created by this Agreement are specific and personal and shall not be assigned or delegated by either party, except that the same may be assigned in the event of a transfer or sale of all or substantially all of the assets or ownership interests of the NCR Systemedia Division or business to another entity.

11: The undersigned represent and warrant that they are fully authorized to enter into this agreement, no further corporate action is required to enter into this Agreement, and that the Agreement is a valid obligation, enforceable according to its terms.

The Barton Group, Inc.:                    NCR Corporation:

BY _____                 BY _____

TITLE: Lewis Barton, President             TITLE: VP Global Operations

DATE Apr 6 2002                            DATE Sept 10, 2002

**2003 Contract**

# THE BARTON GROUP, INC.

1040 First Avenue * # 271 * New York, New York 10022

TEL: 212/588–1043 <> FAX: 212/832–6090 <> email: lb@consultbarton.com

September 3, 2003. 2003

NCR Corporation, Systemedia Division
1700 South Patterson Boulevard
WHQ-2E
Dayton, Ohio 45479

Re:   First Amended Business Generation Agreement

Dear Sir or Madam:

First Amended Business Generation Agreement effective August 1, 2002 (Agreement), between The Barton Group, Inc. (BGI) with its principal place of business at 1040 First Avenue (# 271), New York, New York 10022 and NCR Corporation, by and through its Systemedia Division (NCR) having its principal place of business at 1700 South Patterson Boulevard, WHQ-2E, Dayton, Ohio 45479.

WHEREAS, BGI represents that it has an sales agreement with McDonald's Corporation and any purchasing authorities affiliated with the McDonald's System (collectively, McD) for all sales of products, machinery and equipment, supplies and technology transfer (licensing and royalty sales and fees) regarding the project known as the McD Automatic Sandwich Wrap Project (ASW Project). The ASW Project is generally comprised of a printing solution addressing printing on a generic paper sandwich wrapper for low volume sandwiches sold by McD, using variable technology to print the name of the sandwich on the wrapper on an as-needed basis; for purposes of this Agreement, the definition of ASW Project shall not include Point of Sale hardware, associated central processing units, or point of sale or data warehousing software and services;

WHEREAS, the parties entered into a fae commission agreement on July 11, 2002, concerning the ASW Project ("2002 Agreement");

WHEREAS, McD is considering an alternative to the ASW Project that uses a different technological approach comprised of a print-on-demand pressure-sensitve label manually applied to a sandwich wrapper or box that replaces a direct thermal receipt/pre-printed label application ("Sticky Label Project"). NCR has proposed to BGI that NCR and BGI partner on developing a technological and conceptual approach that may contain NCR proprietary information and trade secret information, including know-how;

WHEREAS, NCR wishes to share with BGI certain proprietary information relating to the Sticky Label Project solely for the purpose of promoting the joint economic interests of NCR and BGI;

WHEREAS, the parties wish to work together in an effort to potentially converge the ASW and Sticky Label Projects into an alternative project incorporating some or all elements of the ASW and Sticky Label Projects (collectively, "Alternative Project");

WHEREAS, NCR wishes to divulge to BGI certain proprietary and confidential information on an exclusive basis for the sole purpose of advancing NCR's interests with McD and BGI agrees to receive such information (defined more clearly below) on an exclusive basis to NCR for the purpose of advocating the NCR solution to McD;

WHEREAS, the parties desire to amend the 2002 Agreement;

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties hereto agree as follows:

1: NCR hereby appoints BGI as its exclusive sales agent with respect to, and strictly limited to, the ASW Project with McD for all sales of products, machinery and equipment, supplies and technology transfer (licensing and royalty sales and fees). BGI agrees to accept such exclusive agency and, as NCR shall direct, to represent NCR in NCR's efforts to secure the ASW Project. NCR shall at all times retain the right and ability to interact directly with McD without involving BGI.

1.1: NCR hereby appoints BGI as its exclusive sales agent with respect to, and strictly limited to, the Sticky Label Project and the Alternative Project with McD for all sales of products, machinery and equipment, supplies and technology transfer (licensing and royalty sales and fees). BGI agrees to accept such exclusive agency and, as NCR shall direct, to represent NCR in NCR's efforts to secure the Sticky Label Project and the Alternative Project. BGI shall not share with any other entity (except as permitted below in section 8 with respect to McD only) any information provided by NCR to BGI with any competitor to NCR that also may be working with either McD or BGI on the ASW, Sticky Label, or the Alternative Projects. NCR shall at all times retain the right and ability to interact directly with McD without involving BGI.

1.2: In the absence of further written agreement and except for the ASW, Sticky Label, and the Alternative Projects, NCR shall have no obligation toward BGI and BGI shall have no right to compensation from NCR with respect to any projects, product or services sales, or potential product or services sales opportunities NCR has had, now has, or may have in the future to McD. Nothing in this agreement shall limit any other NCR division's ability to sell other products or services by any other division of NCR not expressly related to the ASW, Sticky Label, and Alternative Projects, and BGI shall have no right to or expectation of compensation related thereto.

2: BGI represents and warrants to NCR that:

- BGI has an sales agreement with McD ("BGI-McD Agreement") for the ASW Project. The BGI-McD Agreement specifically authorizes BGI to enter into commission agreements, such as this Agreement, with proposed vendors. BGI has disclosed it proposed commission arrangements to McD.

- BGI is free to enter into this Agreement and to perform each of the terms, conditions and covenants contained in this Agreement. BGI's performance of this Agreement shall not conflict with any obligation of BGI, including any agreements with other proposed vendors to McD regarding the ASW Project. Furthermore, BGI is not restricted or prohibited, contractually or otherwise, from entering into or performing this Agreement.

- BGI shall faithfully and accurately convey to McD information and documentation provided by NCR in aid of NCR's efforts to secure the ASW, Sticky Label, and Alternative Projects.

- BGI shall not provide, directly or indirectly, any information provided by NCR, whether written, oral, electronic, or other form, to any competitor of NCR. BGI shall not use any information provided by NCR to solicit business from any other entity other than McD.

- BGI shall not misrepresent or mischaracterize to McD any communications made by NCR to BGI during the term of this Agreement and BGI agrees to promptly, accurately, and completely relay without delay all McD communications through BGI intended by McD for NCR.

3

3: The parties shall be independent contractors. Nothing in this agreement shall be construed to give either the power, express or implied, to direct or control the daily activities of the other, or to constitute the parties as employer and employee, franchisor and franchisee, partners, joint venturers, co-owners, principal and agent, or otherwise as participants in a joint undertaking. Each party understands and agrees that, except as specifically provided here, neither party grants the other the power or authority to make or give any agreement, statement, representation, warranty, or other commitment on behalf of the other, or to enter into any contract, or otherwise incur any liability or obligation, express or implied, on behalf of the other, or to transfer, release, or waive any intellectual property right, or other right, title or interest of the other. Neither party, nor any representative, agent or subcontractor of a party, will hold itself out as anything but an independent contractor to the other party.

4: The initial term of this Agreement is the later of (a) 24 months from the Effective Date or (b) until McD awards the ASW, Sticky Label, or Alternative Project to a vendor or (c) McD decides not to pursue the ASW, Sticky Label, or Alternative Project. Thereafter it will renew for additional 12-month periods if the parties each elect to enter into such a renewal. If NCR is awarded all or part of the ASW, Sticky Label, or Alternative Project at a time when BGI is serving as NCR's sales agent under this Agreement, this Agreement shall automatically renew for additional 12 month terms until such time as NCR is no longer supplying any goods or services to McD on the ASW, Sticky Label, or Alternative Project. NCR may terminate this Agreement immediately without further liability to BGI if BGI (a) breaches any material term or condition of this Agreement including any express warranty, (b) ceases to function as a going concern or to conduct operations in the normal course of business, (c) has a petition filed by or against it under any state or federal bankruptcy or insolvency laws (or their foreign equivalents) which petition has not been dismissed or set aside within sixty (60) days of filing, or (d) makes a general assignment for the benefit of creditors, suspends business or commits any act amounting to business failure, or makes a voluntary assignment of or transfers all or substantially all of its property. In the event that NCR is awarded some or all of the ASW, Sticky Label, or Alternative Project and (1) the NCR-McD relationship voluntarily or involuntarily terminates for any reason or no reason, or (2) the ASW, Sticky Label, or Alternative Project is terminated, BGI shall not be entitled to further compensation pursuant to paragraph 6 below as of the date of such termination.

5: The parties shall work together to promote the convergence of the ASW and Sticky Label Projects. Such efforts shall include, at a minimum, coordination of efforts (including without limitation technological approach, engineering solutions, communications, and facilitation of discussions between and among the various stakeholders at McD in the ASW and Sticky Label Projects) to promote the Alternative Project. If awarded the ASW Project, Sticky Label Project, or the Alternative Project's business, NCR will seek to enter into a contractual relationship with McD that shall contain all performance-related obligations and pricing and price change mechanisms.

6: NCR agrees that it will pay BGI a business generation commission of 4% of ongoing product sales and licensing and or royalty fees from any ASW, Sticky Label, or Alternative Project sales, provided that such revenues are actually received by NCR. Business generation commissions shall be calculated on net revenues, defined to be net of freight, tax, insurance, incidentals (but not including products supplied to McD for the ASW, Sticky Label, or Alternative Project), returns, allowances, charges, claims, unearned payment discounts (if applicable), discounts and allowances, and interest on invoices not timely paid. BGI shall be responsible for payment of all applicable taxes on such commission. If NCR is not awarded all or any part of the ASW, Sticky Label, or Alternative Project or if BGI breaches an express warranty, BGI shall not be entitled a commission, fees, expense reimbursements, costs, or the like, incurred or anticipated by BGI.

7: Such commission payments shall be made by NCR to BGI within 45 days of the end of each calendar quarter for qualifying revenues that NCR actually receives on the ASW Project

Case 1:08-cv-05679-GEL   Document 1   Filed 06/24/2008   Page 19 of 20
SEP. 3.2003   3:10PM   SMG GLOBAL LEARNING

4

from McD during that quarter. In order to facilitate the record-keeping task of this transaction, NCR will supply a report on a quarterly basis showing commissionable receipts from McD for the ASW, Sticky Label, or Alternative Project. In addition, NCR will maintain consistent with its then-applicable document retention policy copies of, or, if electronically generated, a electronic file showing all relevant invoices and records of receipts concerning payment by McD to NCR related to the ASW, Sticky Label, or Alternative Project. NCR shall be entitled to off-set against such commission payments any liabilities or debts owed by BGI to NCR.

8.1: We shall each treat as confidential all information either of us reveals to the other in the course of our business under this Agreement (provided the disclosing party regularly treats such information as confidential), whether or not such information is patented, copyrighted, trademarked, or constitutes trade secrets or is otherwise proprietary. Because of the competitive value of such information, neither of us shall at any time disclose such information to third parties, whether or not competitors of the other, including after the termination of this Agreement except for any communications with McD directly related to the ASW, Sticky Label, and Alternative Projects. Upon the expiration or termination of this Agreement, each party shall, at the other's election, either promptly return or destroy all confidential information of the other party and all copies thereof, including any electronically stored copies. This section supersedes any confidentiality agreements between us related to the ASW and Sticky Label Projects.

8.2: Both parties acknowledge and agree that all patents, copyrights, trademarks, trade-names, proprietary information, trade secrets, documents, materials, products, programs, concepts, drawings, plans, technology, designs, methodologies, formulae, specifications, information, samples, models, calculations, hardware, software and the like belonging to one party, whether tangible or intangible and whether written or oral (collectively, the "Information"), which have or may come into the possession or knowledge of the other party, constitute or consist of confidential and proprietary information and/or trade secrets, the disclosure of which may cause serious harm and damage to the disclosing party. Unless explicitly agreed to in writing by an authorized representative of the disclosing party, neither this Agreement nor use or receipt of Information under this Agreement is intended to create any rights of ownership, use, or control of Information, not expressly set forth in this Agreement, nor does it grant the receiving party a license to any of the disclosing party's patents, copyrights, or other intellectual property not expressly licensed hereunder.

9: All tangible and intangible items, including Deliverables and Methodologies, or Information (collectively, "Work Products") that BGI receives from NCR or from a third party on behalf of NCR, shall be the exclusive property of NCR and any such Work Products shall be deemed NCR's proprietary information and shall not be disclosed to anyone outside of BGI or MCD, or used by BGI or others without the prior written consent of NCR. "Deliverables" are the items that NCR will provide to BGI as part of the Alternative Project. "Methodologies" are those NCR-developed or approved templates, approaches, processes and methodologies that NCR may use, at its discretion, to perform its obligations under the ASW, Sticky Label, or Alternative Projects and create the Deliverables. To the extent that all or any portions of such Work Products are disclosed or otherwise become evident to BGI, BGI agrees not use, copy, disclose, distribute, convey or license the Work Products or any modifications thereto or derivative works thereof, to any third party, specifically any competitor to NCR for the ASW, Sticky Label, or Alternative Projects business.

10: This agreement constitutes the entire agreement of the parties on the matters referred to herein, and shall not be modified, changed or amended except in writing signed by the parties.

11: The interpretation and enforcement of this agreement shall be governed by the substantive law of the State of New York, without resort to its conflict of law rules.

5

12: The obligations and benefits, rights and duties created by this Agreement are specific and personal and shall not be assigned or delegated by either party, except that the same may be assigned in the event of a transfer or sale of all or substantially all of the assets or ownership interests of the NCR Systemedia Division or business to another entity.

13: The undersigned represent and warrant that they are fully authorized to enter into this agreement, no further corporate action is required to enter into this Agreement, and that the Agreement is a valid obligation, enforceable according to its terms.

THE BARTON GROUP, INC.                NCR CORPORATION

BY _[signature]_                      BY _[signature]_

TITLE: Lewis Barton, President        TITLE: MARK D. QUINLAN
                                             VP/GENERAL MANAGER, SMD

DATE  8-8-03                          DATE  9-3-03